*Penn-Star Insurance Company v. Dongbu Insurance Co., Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of October, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> GERARD E. LYNCH,
> STEVEN J. MENASHI,
> *Circuit Judges.*

---

PENN-STAR INSURANCE COMPANY,

> *Plaintiff-Appellee*,

v.                                                      24-2925

DONGBU INSURANCE CO., LTD.,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Plaintiff-Appellee: | STEVEN VERVENIOTIS, Miranda Slone Sklarin Verveniotis LLP, Mineola, NY. |
| For Defendant-Appellant: | JOANNA MICHELLE ROBERTO, Matthew S. Lerner, Brendan Thomas Fitzpatrick, Gerber Ciano Kelly Brady LLP, Buffalo, NY. |

Appeal from the November 1, 2024, judgment of the United States District Court for the Eastern District of New York (Cogan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellee Penn-Star Insurance Company ("Penn-Star") sued Defendant-Appellant Dongbu Insurance Co., Ltd. ("Dongbu") in November 2022, seeking a declaratory judgment regarding Dongbu's obligation to defend and indemnify Penn-Star's insured, 89th Jamaica Realty ("89th Jamaica"), and damages for Dongbu's disclaimer of coverage in July 2022. Dongbu's potential obligation arose from an indemnification provision in 89th Jamaica's lease agreement with Dongbu's insured, J.G.F. NY ("J.G.F."). In 2014, an injured J.G.F. employee sued 89th Jamaica and J.G.F.'s subtenant S & H Fish Co. ("S&H") in state court; S&H was insured by KBIC Insurance Co. ("KBIC"), with additional insured coverage for 89th Jamaica included in S&H's policy.[1] That lawsuit ultimately settled in 2023 for $3,030,000, with Dongbu contributing $250,000. In this case, the district court ruled that Dongbu was equitably estopped from disclaiming coverage and awarded Penn-Star $750,000, the amount remaining in J.G.F's $1,000,000 insurance policy with Dongbu, as well as an additional $24,353 for defense costs (following the 2022 disclaimer) and prejudgment interest.

---

[1] Leading Insurance Group Insurance Co. ("Leading"), an entity related to KBIC, appears to have directed 89th Jamaica's defense in the underlying action, but the precise relationship between Leading and KBIC is not clear. For simplicity, we refer to S&H's insurer as KBIC throughout this order.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision.

\*      \*      \*

"We review de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021). "Summary judgment is required if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Acct. L7N01967*, 731 F.3d 189, 192 (2d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (explaining that the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "Likewise, 'we review de novo the district court's interpretation and application of state law.'" *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023) (alteration accepted) (quoting *Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018)).

## I. Equitable Estoppel

Under New York law, equitable estoppel applies when a party demonstrates "that it relied upon another's actions, its reliance was justifiable, and that, in consequence of such reliance, it prejudicially changed its position." *Town of Hempstead v. Inc. Vill. of Freeport*, 15 A.D.3d 567, 570 (2d Dep't 2005). In the insurance context specifically, "[t]he doctrine of estoppel precludes an insurance company from denying or disclaiming coverage where the proper defending party relied to its detriment on that coverage and was prejudiced by the delay of the insurance company

3

in denying or disclaiming coverage based on 'the loss of the right to control [its] own defense.'" *Merchants Mut. Ins. Grp. v. Travelers Ins. Co.*, 24 A.D.3d 1179, 1182 (4th Dep't 2005) (second alteration in original) (quoting *General Accounting Ins. Co. v. U.S. Fid. & Guar. Ins. Co.*, 193 A.D.2d 135, 137 (3rd Dep't 1991)).

On appeal, Dongbu argues that Penn-Star lacks contractual standing to sue because it is a stranger to Dongbu's insurance policy, and that Penn-Star has not, in any case, demonstrated justifiable reliance or prejudice. We disagree.

As an initial matter, under New York law, Penn-Star has standing to assert an equitable estoppel claim against Dongbu. Equitable estoppel "may be applied in disputes between insurers." *Yoda, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 88 A.D.3d 506, 508 (1st Dep't 2011); *see also Liberty Ins. Underwriters, Inc. v Arch Ins. Co.*, 61 A.D.3d 482, 482 (1st Dep't 2009) ("We reject plaintiff's argument that this doctrine should be limited to coverage disputes between insurers and insureds, and not applied to coverage allocation disputes between insurers."); *Lancer Indem. Co. v. Peerless Ins. Co.*, 208 A.D.3d 768, 769 (2d Dep't 2022) ("Th[e] [equitable estoppel] doctrine is not limited to coverage disputes between insurers and insureds, and may be applied in appropriate cases to coverage allocation disputes between insurers.").

Dongbu's effort to distinguish this case law is unpersuasive. Dongbu is correct that *Yoda* involved a dispute over additional insured coverage. *See Yoda*, 88 A.D.3d at 507–08. But *Yoda* did not suggest that that fact was material to the plaintiff insurer's standing to sue.[2] Similarly, as

---

[2] Dongbu points to the First Department's observation that, "[i]f [the defendant insurer] had disputed coverage in a reasonably timely manner, plaintiffs could have impleaded [the defendant's insured], thereby triggering insured contract coverage or, at least, timely resolution of any disclaimer." *Id.* at 508. But the court offered this statement to explain why the plaintiffs may have suffered prejudice from the defendant's untimely disclaimer, not to suggest that separate litigation over indemnification would preclude equitable estoppel claims.

4

Dongbu points out, *Liberty* involved a dispute between co-insurers. *See Liberty*, 61 A.D. at 482–83. But there, too, the precise relationship between the insurers was not central to the reasoning; indeed, the court expanded the scope of the equitable estoppel doctrine. *See id.* at 482 ("We reject plaintiff's argument that this doctrine should be limited to coverage disputes between insurers and insureds, and not applied to coverage allocation disputes between insurers.").

Dongbu's reliance on *Federated Department Stores, Inc. v. Twin City Fire Insurance Co.*, 28 A.D.3d 32 (1st Dep't 2006), is likewise misplaced. In that case, the First Department noted that, "as a general rule, estoppel cannot be used to create coverage where none exists." *Id.* at 38. But shortly after this statement, the court cited and distinguished a prior case in which "the insurer, which had defended an owner despite its nonlisting in the policy's additional insured endorsement, was equitably estopped from disclaiming coverage." *Id.* (citing *Utica Mut. Ins. Co. v. 215 W. 91st St. Corp.,* 283 A.D.2d 421 (2nd Dep't 2001)). Whatever the "general rule" may be, *Federated Department Stores* clarifies that under appropriate circumstances equitable estoppel can apply even if the defendant does not have a contractual obligation to the plaintiff.

Nor did the district court err in concluding that Penn-Star had established justifiable reliance and prejudice as a matter of law. With respect to justifiable reliance, Dongbu's argument on appeal—that the district court and Penn-Star misunderstood the 2020 letter—misses the point. For equitable estoppel to apply, we need not determine whether Penn-Star correctly interpreted Dongbu's intent in sending the letter. We need determine only that, whatever Dongbu may have intended, Penn-Star's interpretation of the letter was justifiable. *See Geico Ins. Co. v. Silverio*, 171 A.D.3d 924, 925 (2d Dep't 2019).

We have no difficulty doing so. The letter stated that "DB Insurance has agreed to defend and indemnify 89th Jamaica Realty LLC to the fullest extent of its policy limits for this matter and

5

as well as [sic] all claims made against 89th Jamaica Realty LLC based on the contractual liability portion of the Policy, *without reservations*." App'x 135 (emphasis added). "Th[is] communication[] did not suggest that [Dongbu] planned to assert policy defenses to its coverage of the defense and indemnification, or that it was reserving the right to do so later." *Sparta Ins. Co. v. Tech. Ins. Co., Inc.*, 751 F. App'x 32, 34 (2d Cir. 2018). And the letter's conclusion underscored the point: "In sum though, DB Insurance acknowledges and recognizes its defense and indemnity obligations to 89th Jamaica Realty LLC for this matter pursuant to its contractual liability coverage, and further takes the position that the S&H Fish policy is primary to that of the DB Policy." App'x 137.

Comparing Dongbu's 2020 letter with its letter disclaiming coverage in 2022 is illustrative. When Dongbu ultimately sought to make its position clear, it used very different language, stating that "the DB Policy does not provide coverage after the exhaustion of the S&H Fish Corp. ('S&H Fish') policy because there is no finding of contractual indemnification as against JGF and therefore no obligation under the Contractual Liability portion of the Policy." *Id.* at 192. The letter also notes that "DB reserves the right to assert any term, condition or provision of the Policy not yet mentioned, or any other coverage defense which may be applicable." *Id.* at 195. Nowhere in the 2020 letter does Dongbu use similar language. *See id.* at 135–37. Accordingly, Penn-Star justifiably relied on the 2020 letter as an acceptance of 89th Jamaica's tender of coverage.

We also conclude that Penn-Star suffered prejudice. Dongbu argues that Penn-Star cannot establish prejudice because KBIC primarily controlled 89th Jamaica's defense. Dongbu is correct that the First Department noted in *Federated Department Stores* that "[p]rejudice is established only where the insurer's control of the defense is such that the character and strategy

6

of the lawsuit can no longer be altered." 28 A.D.3d at 39. But this language occurred in the context of addressing "the erroneous premise that because Twin City controlled Federated's defense in the underlying action, prejudice is presumed." *Id.* In context, the language clarified that prejudice cannot be "uniformly presumed in such circumstances," *id.*, not that exclusive control of the defense by the defendant is a necessary condition for prejudice. Penn-Star need show only that because of Dongbu's untimely disclaimer, it suffered "a prejudicial change in its position." *Broadworth Realty Assocs. v. Chock 336 B'way Operating, Inc.*, 168 A.D.2d 299, 301 (1st Dep't 1990).

We agree with the district court that Penn-Star demonstrated a prejudicial change in position. Penn-Star established that, had it known Dongbu did not intend to provide coverage, it would have been more active in the underlying litigation. Penn-Star also demonstrated that Dongbu's 2020 letter and involvement in the mediation affected those proceedings. Despite KBIC's control over 89th Jamaica's defense in the underlying action, either of these showings suffices to establish that Penn-Star was made worse off than it would have been had Dongbu never sent the 2020 letter. *See U.S. Fid. & Guar. Co. v. N.Y., Susquehanna & W. Ry. Corp.*, 275 A.D.2d 977, 978–79 (4th Dep't 2000) ("Although defendant was represented by the attorneys of its choice, the attorneys shared information with plaintiff, provided plaintiff with status reports, conducted depositions with the approval of plaintiff and entered into settlement discussions with plaintiff's knowledge."); *Bos. Old Colony Ins. Co. v. Lumbermens Mut. Cas. Co.*, 889 F.2d 1245, 1248 (2d Cir. 1989) ("The pretrial negotiating stance of the Bodians and Boston—including the resolve to go to trial—was undoubtedly stiffened, and the Bodians' personal exposure unreasonably made more likely, by the belief that there was an additional $100,000 upon which to draw."). Accordingly, the district court properly granted summary judgment to Penn-Star on its equitable estoppel claim.

7

## II.    Damages

The district court also did not err in its award of defense costs and prejudgment interest on those costs.    These costs represented not "extra-contractual damages"—as Dongbu characterizes them, *see* Appellant's Br. 18—but rather the costs of defending 89th Jamaica following Dongbu's disclaimer of coverage.    Since Dongbu was equitably estopped from denying its coverage obligation, Dongbu's duty to defend was "released only *after* a judgment or settlement ha[d] been paid."    *Federal Ins. Co. v. Cablevision Systems Development Co.*, 836 F.2d 54, 56 (2d Cir. 1987). Accordingly, defense costs leading up to and involving the 2023 settlement were well within Dongbu's duty to defend.[3]    And nothing in the record suggests that the district court abused its discretion in awarding prejudgment interest.    *See* N.Y. C.P.L.R. § 5001(a) (McKinney 2025) (noting that, in an equitable action, whether to grant "interest and the rate and date from which it shall be computed shall be in the court's discretion").

\*        \*        \*

We have considered Dongbu's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3]  In its final judgment, the district court based its calculation of "defense costs incurred by Penn-Star, after Dongbu's untimely disclaimer, defending the claims asserted against 89th Jamaica in the Underlying Action, as detailed in Penn-Start's [sic] proof of such payments . . . and not objected to by Dongbu."    Special App'x 4.    On appeal, Dongbu does not challenge the district court's conclusion that Dongbu failed to object to Penn-Star's proof of payments.